57 F.3d 1071
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Renaldo GALLOWAY; Derrick Payne; and Corrie D. Williams,
Defendants-Appellants.
 Nos. 94-3173, 94-3174, 94-3176.
 United States Court of Appeals, Sixth Circuit.
 May 31, 1995.
 
 Before MARTIN and BOGGS, Circuit Judges and BELL, District Judge.*
 PER CURIAM.
 
 
 1
 In this consolidated appeal, three co-defendants appeal various decisions of the district court. Renaldo Galloway does not dispute his guilt, but asks this court to remand his case to the district court for resentencing, due to two alleged errors in calculating his base offense level. Derrick Payne claims that the district court erred in denying his motion to suppress the evidence that linked him to a cocaine ring. Corrie Williams contends that the court erred in sentencing him based on a prior conviction, that a reference to gangs irreparably tainted the proceedings, and that the court improperly denied his motion for a severance. Because we hold that all of these claims lack merit, we affirm the district court.
 
 
 2
 * On February 8, 1993, DEA agents arrested Lee Helire after discovering nearly eight kilograms of cocaine base in his luggage. Helire quickly decided to cooperate with the authorities and agreed to complete a controlled delivery at a bus terminal in Columbus, Ohio. Police then apprehended Vincent "Little Dog" Watkins upon his rendevous with Helire at the bus terminal.
 
 
 3
 As a result of the arrest and Helire's information, police were able to gather a great deal of related information about Watkins's activities in Columbus and about the extensive drug network Vincent Watkins and his brother Glen maintained in California. Police obtained Watkins's pager number from Helire, and discovered that although the number was registered in Watkins's name, the telephone at the matching address was listed under Renaldo Galloway.
 
 
 4
 Helire was already acquainted with Galloway (known to him as "Chick"). Helire frequently smoked crack cocaine with him in the Santa Fe Gardens Apartments in Compton, California, and it was Galloway who enlisted Helire as a narcotics mule. During one social call, Galloway admitted to Helire that he had occasionally transported cocaine for the Watkinses, adding that Helire "could not imagine the amount of cocaine" that was transported by the Watkinses' organization; Helire responded by saying that he'd like to do the same. During a subsequent visit to Galloway's apartment in Compton, when Galloway asked Helire if he was ready to carry cocaine for Watkins, Helire said yes. In the process of preparing for the smuggling excursion to Columbus, Helire was introduced to several members of the Watkins organization.
 
 
 5
 Acting on this information, the police put several individuals under surveillance, including Galloway. On March 25, 1993, the police received an anonymous phone tip that Galloway had rented Room 148 of the Cross Country Inn. Police initiated four days of round-the-clock surveillance, during which a variety of suspicious activity transpired. Police observed that this room was occupied by Payne, Galloway, and Williams, and that the room was registered in Galloway's name and paid for in cash. Although the motel offered free local calls, all three defendants instead placed calls from a nearby pay phone. The occupants did not allow motel housekeeping to enter the room. Galloway left frequently and was followed to the residences of several known associates of Vincent Watkins. He, Payne and Williams also visited several locations linked to Watkins and were seen in vehicles registered to people connected to the Watkinses or their Compton drug operation.
 
 
 6
 On May 29, Amy Berridge, who is Watkins's mother, and Sam Jackson checked into Room 248 of the motel under Berridge's name, carrying a cardboard airline garment box. However, their boarding passes, which they left at the front desk, listed their names as Amy and Sam Jackson. Shortly after checking in, Jackson went to Room 128 and left a few minutes later, carrying a yellow tote bag to his room. An hour or so later, Jackson and Berridge left without the yellow bag or the garment box, but carrying two other bags. They went to a restaurant and then the airport. Police approached the pair at the airport, and Berridge explained that she had come to Columbus intending to visit her son in the Franklin County Jail, but that authorities had prevented her from seeing him. However, jail authorities had no record of any visit, noting that federal prisoners are only allowed visitors on Tuesdays and Saturdays. The police were allowed to search the garment bag, which yielded nothing, but they did not examine another bag which had been checked in airline baggage.
 
 
 7
 On March 29, police obtained a warrant based on this information, authorizing a search of Room 148 and "any person in the location for contraband and/or drug monies." The police waited until March 30 before executing the warrant, acting when the three defendants left the room to enter a taxi. Police searched Payne and discovered 506 grams of cocaine base of a 53% purity; they also found a loaded 9-mm Luger pistol in Williams's jacket pocket. A search of the room revealed various papers and phone numbers possibly related to drug operations in California. Williams had written two telephone numbers on a slip of paper found in his pocket; the numbers matched those for two residences where Vincent Watkins stayed when in Columbus. Galloway, Payne and Williams were arrested.
 
 
 8
 A federal grand jury returned a three-count indictment. Count One charged all three with conspiracy to possess more than fifty grams of crack with intent to distribute, in violation of 21 U.S.C. Sec. 846. Count Two charged all three with possession of more than fifty grams of crack with intent to distribute, in violation of 21 U.S.C. Secs. 841(a)(1) and (b)(1)(A) and 18 U.S.C. Sec. 2. Count Three charged Williams with carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. Sec. 924(c).
 
 
 9
 Prior to trial, deputies in the Franklin County Jail intercepted a note from Galloway, presumably destined for Vincent Watkins. Addressed simply to "V," it stated:
 
 
 10
 Chick, 8ER2, I go to Court Friday this week. If you have any contact with Derrick tell him we don't know anything about each other. If I'm cleared of conspiracy, they can't connect us. See you at church or mast [sic].
 
 
 11
 On July 26, 1993, the district court held an evidentiary hearing on motions to suppress filed by all three defendants, as well as Galloway's and Williams's motions for relief from prejudicial joinder. The court rejected the defendants' assertion that there was neither probable cause to support a search warrant nor reasonable suspicion for police officers to stop and frisk them once outside the motel room. Galloway and Williams sought to suppress several statements made by Payne immediately following his arrest,[1] but their motions were denied because the government agreed not to use those statements at trial.
 
 
 12
 A jury trial commenced the next day. Helire repeated his allegations about Galloway's past drug use and involvement in the Watkinses' drug operations. He also testified that he saw Payne at Vincent Williams's detention hearing in Columbus, and that Payne sold drugs for the Watkinses' in Compton. At the close of the government's case-in-chief, the defendants presented no evidence nor renewed any of their objections. On July 29, 1993, the jury returned verdicts of guilty on all three counts.
 
 II
 
 13
 Galloway raises two objections to his sentencing. He asserts that the district court erred in concluding that Galloway obstructed justice by sending the intercepted note to Watkins. He also claims that the court erred in sentencing him based upon the nearly eight kilograms of crack cocaine possessed by Helire, after finding that the amount was reasonably foreseeable and within the scope of Galloway's agreement to undertake joint criminal activity.
 
 
 14
 Payne objects on three grounds to the admission of evidence resulting from the search warrant. First, he contends that the district court erred in denying his motion to suppress because the affidavit in support of the search warrant contained material misrepresentations and omissions. Second, he claims that the anonymous tip, combined with a lack of any knowledge of, or reasonable belief in, illegal activity, did not constitute probable cause for the search warrant. Last, he argues that the arrest and search of Payne in the rear of a taxi cab exceeded the scope of the search warrant.
 
 
 15
 Williams objects to three of the district court's evidentiary and sentencing rulings. First, he asserts that the district court erred in refusing to admit an alleged affidavit of Galloway that purportedly exonerates him. Second, he maintains that the mention of "gang-related" testimony was so prejudicial as to deny Williams a fair trial. Last, he claims that the prosecution failed to submit notice of a prior conviction before trial, as required by 21 U.S.C. Sec. 851.
 
 III
 Renaldo "Chick" Galloway
 
 16
 Galloway was sentenced to a twelve-year term of imprisonment and five years of supervised release. Galloway does not contest his guilt. Rather, he claims the district court should not have found that he obstructed justice pursuant to USSG Sec. 3C1.1. He also argues that the court improperly applied to him as relevant conduct the eight kilos of crack cocaine carried by Helire. See USSG Sec. 1B1.3.
 
 
 17
 This court reviews the district court's factual findings at a sentencing hearing for clear error. 18 U.S.C. Sec. 3742(e). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). However, the government need only show the existence of a fact by a preponderance of the evidence for use under the sentencing guidelines. United States v. Watkins, 994 F.2d 1192, 1195 (6th Cir.1993).
 
 
 18
 The district court was not clearly erroneous in finding that Galloway tried to influence Payne's testimony through the note. Galloway argues that he did not obstruct justice because "on its face [the note] ... does not constitute an attempt to influence a witness." However, the comments to Sec. 3C1.1 state that obstruction of justice includes "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness or juror, directly or indirectly, or attempting to do so ... [and] committing, suborning, or attempting to suborn perjury...." USSG Sec. 3C1.1, comment. (n. 3(a)-(b)) (emphasis added). The district court properly believed that asking another defendant to feign ignorance warranted the two-level enhancement.
 
 
 19
 Galloway cites United States v. Brooks, 957 F.2d 1138, 1149-50 (4th Cir.), cert. denied, 112 S.Ct. 3051 (1992), as requiring that an enhancement for a threat is appropriate only when "the defendant either threaten[s] the co-defendant ... in his or her presence or issue[s] the threat in circumstances in which there is some likelihood that the co-defendant ... will learn of the threat." However, Brooks does not establish a "likelihood of receipt" requirement for threats, but merely distinguishes frustrated outbursts from genuine attempts at intimidation. The court proceeds to note that "[i]t is not even clear that Brooks actually intended that Patterson learn of the threat." Id. at 1150. The court's skepticism was based on the fact that the "threat" was overheard only by a nearby Deputy United States Marshal, who hardly could be expected to relay the information to the co-defendant Patterson, thus "there is no basis for concluding from the circumstances in which the threat was made that Patterson might learn of the threat." Ibid. In contrast, there is no similar evidence that Galloway was insincere or only jesting: the note never reached Payne because of the prison staff's vigilance, not due to a lack of effort or desire on Galloway's part.
 
 
 20
 Galloway also claims that there was no actual obstruction of justice because even if Watkins had received the note and been able to silence Payne regarding their conspiracy, he nonetheless would have been convicted of aiding and abetting and that "since the sentence for both of these crimes is the same, in reality there was no obstruction of justice." Under this novel theory, no act could warrant an enhancement unless it would also clear him of the aiding and abetting count: Galloway could have killed Payne to squelch his testimony and still not have obstructed justice. The broad language of Sec. 3C1.1, as well as common sense, counsels against such a strained interpretation. Similarly frivolous is Galloway's claim that there is no evidence to suggest that the "Derrick" named in the note refers to his co-defendant Payne.
 
 
 21
 Likewise, the district court was not clearly erroneous in attributing to Galloway as relevant conduct the approximately eight kilograms of cocaine transported by Helire. In determining Galloway's relevant conduct for the conspiracy charge, a court must find that the drug amount was reasonably foreseeable to Galloway and was within the scope of his agreement for the jointly undertaken criminal activity in which he participated. USSG Sec. 1B1.3, comment. (n. 3); United States v. Jenkins, 4 F.3d 1338 (6th Cir.1993), cert. denied, 114 S.Ct. 1547 (1994). There is ample evidence that both the fact of Helire's trip and the quantity of crack cocaine that he carried was foreseeable: Galloway told Helire that he had smuggled cocaine several times for Watkins; Galloway actually recruited Helire to carry drugs, so Galloway should have foreseen (and probably knew of) Helire's trip; Galloway told Helire that he "could not imagine the amount of cocaine" that was transported; and, after three days of distributing drugs from the motel room, more than a half-kilogram of cocaine remained, suggesting that the trio started with a much larger amount.
 
 IV
 Derrick Payne
 
 22
 Payne contends that the search warrant was invalid because the police lacked probable cause and that the police exceeded the scope of the warrant by removing him from a taxi and searching him.
 
 
 23
 When reviewing a denial of a motion to suppress, a court should view the evidence in the light most favorable to the government and must accept the factual determinations of the trial court unless they are clearly erroneous. United States v. Gay, 774 F.2d 368, 375 (10th Cir.1985). Further, "[t]here is ... a presumption of validity with respect to the affidavit supporting the search warrant." Franks v. Delaware, 438 U.S. 154, 171 (1978).
 
 
 24
 A search warrant need only reflect probable cause, defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The evidence supporting the search warrant need not be admissible at trial. Draper v. United States, 358 U.S. 307 (1959).
 
 
 25
 Payne's three claims can be disposed en masse. Payne insists that because Helire's statement to police that Galloway had recently carried eight kilos of cocaine on a flight to Columbus was not true, the search warrant was fatally flawed. However, Helire did not declare that he actually witnessed Galloway transport the cocaine, but rather that Galloway had told him of the deed. Moreover, even without this piece of evidence, the search warrant was more than adequately supported: police watched for four days as the defendants visited a veritable "Who's Who" of people linked to the Watkinses' drug network and engaged in extremely suspicious behavior.
 
 
 26
 Payne argues that his arrest and search were illegal because he "was located in the rear of a taxi-cab and not in or about room 148, and [he] was searched and arrested before the search warrant for room 148 was even executed." Payne is mistaken in believing that the rear seat of a taxicab is a sanctuary for purposes of a search warrant, particularly when the team executing the warrant had just seen the defendants leave the room specified in the warrant, certainly making the defendants "about" Room 148. Additionally, the search warrant expressly authorized the search of "any person or persons at such premises ... [and] any person in the location for contraband and/or drug monies."
 
 
 27
 Finally, even if the search warrant was flawed in the manner Payne asserts, the "good faith" exception of United States v. Leon, 468 U.S. 981 (1984), is applicable. On the basis of the information on the face of the warrant, a reasonable well-trained officer would believe that the search warrant was facially valid, being unaware of the hidden defects claimed by Payne. United States v. Savoca, 761 F.2d 292, 295-96 (6th Cir.), cert. denied, 474 U.S. 852 (1985).
 
 
 28
 Thus, under the deferential standard of review that requires a court to view the evidence in the light supporting the district court's decision, Payne has not produced evidence that can overcome this burden.
 
 V
 Corrie Williams
 
 29
 Williams claims that the district court committed prejudicial error in not allowing into evidence an affidavit in which Galloway allegedly exonerates him. He also argues that a witness's reference to "gang related" graffiti found on a newspaper in Room 128 was prejudicial error, and that the government failed to timely notify him of a prior conviction that was used to enhance his sentence.
 
 
 30
 A court's denial of a motion to sever is reviewed under an abuse of discretion standard. United States v. Mayes, 512 F.2d 637 (6th Cir.), cert.denied, 422 U.S. 1008 (1975). A court will find an abuse of discretion where the court has a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Balani v. INS, 669 F.2d 1157, 1160 (6th Cir.1982) (citations omitted). This court's inquiry is limited to whether the circumstances clearly demonstrate that the district court acted unjustifiably. NLRB v. Guernsey-Muskingum Elec. Coop. Inc., 285 F.2d 8, 11 (6th Cir.1960).
 
 
 31
 A district court's decision to admit evidence is also left to the sound discretion of the judge, and a court will reverse only for an abuse of discretion. United States v. Rios, 842 F.2d 868, 872 (6th Cir.1988), cert. denied, 488 U.S. 1031 (1989). As a result, a reviewing court can reverse only if the decision was clearly erroneous, viewing the evidence in the light most favorable to the proponent, minimizing its prejudicial effect and maximizing its probative value. United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1979).
 
 
 32
 A party seeking a severance must show that a joint trial will result in prejudice. FED.R.CRIM.P. 14. Williams, like Galloway, originally sought a severance in order to exclude Payne's incriminating statements made to police immediately after his arrest. The severance was denied after the government agreed not to use Payne's statements at trial. At the motion hearing, Williams's attorney for the first time sought a severance based on the alleged exculpatory affidavit of Galloway. After questioning by the court, Galloway's attorney admitted that he did not expect his client to testify at this trial or any future proceeding; in fact, he had advised Galloway to that effect. Nor would Galloway agree to waive his Fifth Amendment rights.
 
 
 33
 The district court denied the severance, citing United States v. Causey, 834 F.2d 1277, 1287 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988), which requires a party seeking to present a co-defendant's exculpatory testimony to show that the co-defendant will in fact testify if the cases are severed. Since Williams was unable to make this showing, the likely result would be two trials where only one was necessary, and no fuller evidentiary record. The court did not abuse its discretion, but rather followed black-letter law.
 
 
 34
 Additionally, Williams never tried to admit the Galloway affidavit as evidence, nor did he authenticate it--his attorney could not even specify when or how he acquired it. Williams has not produced the affidavit, so this court can not determine if it truly is exculpatory. Further, the government notes that Williams did not try to admit the affidavit under a hearsay exception and failed to preserve the issue for appeal, thus waiving the argument. "As a general rule, this court will usually decline to entertain arguments not presented in the first instance to the trial court." Brown v. Crowe, 963 F.2d 895, 897 (6th Cir.1992).
 
 
 35
 Williams's second claim of error is similarly meritless. Williams argues that a prosecution witness's single mention of "gang-related" graffiti scrawled on a copy of USA Today irreparably tainted the trial. Defense counsel objected upon the first reference at trial and the district court sustained the objection. The court admitted the paper as evidence because it contained written references linking the defendants to other members of the conspiracy. In its jury instructions, the court admonished the jury:
 
 
 36
 I want to emphasize as strongly as I know how that there is no evidence that ... any of these defendants was ever involved in any gang activity of any kind ... and you should not speculate about that or draw any inference about that.... I want you to ignore those references completely and entirely as you examine this exhibit ... for [its] information concerning the identity of individuals and the identity of places.
 
 
 37
 Nevertheless, Williams insists that this court adopt a per se rule that "any reference to a gang is so prejudicial it is impossible for the jurors to erase that from their minds or to remain objective...."
 
 
 38
 The only case cited by Williams to support this rather sweeping proposition is United States v. Roark, 924 F.2d 1426 (8th Cir.1991), where there was a significantly greater degree of prejudice. In that case, the prosecution repeatedly pursued the defendant's prior membership in the Hell's Angels motorcycle gang: the prosecutor asked prospective jurors about the group during voir dire, discussed the group in his opening and closing statements, and had two witnesses testify almost exclusively about the organization and its activities. Id. at 1430-32. Accordingly, that court concluded that "[t]he government began its assault on the Hells [sic] Angels organization in voir dire, and continued throughout the trial in a relentless attempt to convict Appellant through his association with the motorcycle club," rendering futile the trial court's efforts "to cure the infection caused by the admission of [this] evidence." Id. at 1432. Based on the lack of similar conduct in this case, Roark is inapplicable; we therefore reject Williams's invitation to craft an unprecedented per se rule.
 
 
 39
 William's final claim of error is that the government failed to notify defense counsel of a prior conviction that it planned to use to enhance Williams's sentence, as required by 21 U.S.C. Sec. 851.[2] The notice of service indicated that the information was hand-delivered to Williams's attorney on July 26, 1993, the scheduled date of trial. The prosecutor testified at the sentencing hearing that he filed it after the district court heard motions to suppress in the morning of the 26th and before jury selection; Williams's counsel argues that since July 26 was the scheduled date of trial, and she did not receive notice before that date, it is immaterial whether it was filed before jury selection. The district court concluded that notice had been served prior to the jury's empanelment.
 
 
 40
 Williams argues that the government must give notice of its intention to use a prior conviction for purposes of enhanced sentencing before the scheduled date of trial, as opposed to the government's claim that the notice need only come before jury selection. The language of the statute mandates notice "before trial"; a criminal trial is considered to begin with jury selection, and several courts have held that Sec. 851 notice need only come before this point. See, e.g., United States v. Johnson, 944 F.2d 396, 407 (8th Cir.), cert. denied, 502 U.S. 1008 (1991); United States v. Weaver, 905 F.2d 1466, 1481 (11th Cir.), cert. denied, 498 U.S. 1091 (1990).
 
 
 41
 Although the Sixth Circuit apparently has not yet been faced with this question, we see no reason to depart from the general rule. The essence of the rule is fair notice, and it seems incongruous to start the clock ticking for purposes of a procedural notice any earlier than for a constitutional matter, such as when double jeopardy attaches. This is even more true when the information concerns sentencing, where the information is of little use absent a conviction. The purpose of the statute is to allow a defendant adequate time to contest the attribution of a prior conviction and prevent sentencing errors. Significantly, Galloway did not dispute the fact of the earlier conviction at sentencing, nor does he disclaim that conviction now. We hold that the trial did not begin until the jury was sworn and that the district court was not clearly erroneous in finding that Sec. 851 notice was served prior to this event.
 
 VI
 
 42
 Because we find that their contentions of error are without merit, the convictions and sentences of Renaldo Galloway, Derrick Payne and Corrie Williams are AFFIRMED.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Payne said that he met Williams and Galloway in California, and they asked him to travel with them to Columbus to help move furniture. He claims that just as they were leaving the motel room, Galloway gave him a plastic bag and told him to hide it in his coat
 
 
 [2]
 Sec. 851. Proceedings to establish prior convictions
 (a)(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions....