NOT RECOMMENDED FOR PUBLICATION

File Name: 20a0107n.06

Case No. 19-5556

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 18, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CHRISTOPHER E. PARSONS, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

**BEFORE: SUTTON, BUSH, and READLER, Circuit Judges.**

**CHAD A. READLER, Circuit Judge.** Christopher Parsons appeals his conviction and sentence for possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A). With respect to his jury trial, Parsons argues that the government violated his Sixth Amendment Confrontation Clause rights by playing a video at trial without producing for cross examination the confidential informant featured in the video. And as to his sentence, Parsons contends that the district court erred when it applied a two-level enhancement under U.S.S.G. § 3C1.1 on the basis of statements he made in recorded prison calls. Seeing no error in the proceedings below, we **AFFIRM.**

## I. BACKGROUND

During their investigation into Parsons's suspected drug trafficking, officers utilized a confidential informant to attempt a controlled buy from Parsons. The informant was outfitted with

video and audio recording devices. In one video, Parsons discussed the sale of an "8-ball" of methamphetamine as well as pills of oxycodone, stating as to the latter, "I have 30s. I got 30s" (a slang term for 30 milligram tablets of oxycodone). During this exchange, Parsons can be seen on video charging the slide of a distinctive handgun. The video also depicted a monitor connected to a surveillance camera system that tracked Parsons's front driveway.

Following that investigation, Parsons was indicted for knowingly possessing, with intent to distribute, methamphetamine, hydrocodone, oxycodone, and morphine in violation of 21 U.S.C. § 841(a)(1), and for knowingly possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A). Parsons pled guilty to drug trafficking but disputed the charge for possessing a firearm in furtherance of his drug trafficking.

At trial, the government sought to introduce the video into evidence. But it did not produce the confidential informant at trial, instead assigning the task of testifying about the video to the officer who oversaw the controlled buy. Parsons objected, claiming that the government's failure to produce the confidential informant would violate his Confrontation Clause rights. The district court overruled Parsons's objection.

The government also introduced into evidence three guns, various drugs, and drug paraphernalia, all of which were discovered during their investigation of Parsons. After halting Parsons's attempt to flee arrest, officers found in his flight path a handgun chambered with a live high-velocity round. When Parsons was subdued, officers found a bag of crystal meth underneath him and hydrocodone pills on his person. In a subsequent search of Parsons's residence, officers found, near ammunition and two small bags of crystal meth, an additional handgun that matched the gun in the video. They also discovered a SKS rifle (near its ammunition) and the surveillance system shown in the video on top of a gun safe. Officers likewise discovered digital weighing

2

scales and small bags frequently used in drug sales. After taking in all of this evidence, the jury convicted Parsons of possessing a firearm in furtherance of drug trafficking.

At Parsons's ensuing sentencing proceeding, the government sought an obstruction of justice enhancement. By way of background, during trial, Parsons made several prison calls which, Parsons was told, were recorded. In those calls, Parsons directed his wife and others to continue selling drugs and firearms, and to threaten, physically harm, and even kill the two FBI Task Force Officers involved in his investigation. Parsons also stated that if he were sentenced to twenty years in prison, he would "kill that bitch [the confidential informant] when I get out." Ultimately, the district court applied a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice, based upon Parson's prison-call threats.

Parsons timely appealed.

## II. ANALYSIS

*Confrontation Clause.* Parsons argues that his confrontation rights were violated when the district court allowed the government to play a video to the jury without making the confidential informant shown in the video available for cross examination. We review *de novo* claims that the admission of evidence violated the Confrontation Clause. *United States v. McGee*, 529 F.3d 691, 697 (6th Cir. 2008). Where a violation occurs, we will set aside the conviction unless the record demonstrates beyond a reasonable doubt that the error was harmless. *Id.*

1. A criminal defendant's right to confront his accusers, while rooted in English common law, was nonetheless not always honored by English authorities. *Crawford v. Washington*, 541 U.S. 36, 43 (2004). Mindful of infamous episodes of hearsay-based convictions (Sir Walter Raleigh, for instance), and aware of the more immediate abuses of the British admiralty courts, the Framers sought to ensure in our Constitution the basic procedural fairness of confrontation in

criminal prosecution. *Id.* at 44, 47–48. The Sixth Amendment's Confrontation Clause thus guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. As the Supreme Court has interpreted that bedrock constitutional guarantee, a criminal defendant's confrontation right is violated when the government introduces a testimonial out-of-court statement without making the declarant available for cross examination. *Davis v. Washington*, 547 U.S. 813, 823–26 (2006).

In view of this legal backdrop, we must first consider whether the statements in question here are "testimonial." The Supreme Court defined the archetypical testimonial statement as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact" citing, as an example, a "formal statement to government officers" made by an "accuser." *Id.* at 824 (quoting *Crawford*, 541 U.S. at 51). As another example, a statement made to the police with the primary purpose of establishing past events potentially relevant to later criminal prosecution was testimonial, while a statement made to police with the primary purpose of addressing an on-going emergency was not. *Davis*, 547 U.S. at 822. We have sometimes deemed confidential informant's statements to be testimonial, on the view that an objectively reasonable confidential informant would anticipate that her statements would be used by the police to investigate and prosecute the accused. *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004) ("[S]tatements of a confidential informant are testimonial."); *see also United States v. Doxey*, 833 F.3d 692, 708 (6th Cir. 2016); *United States v. Powers*, 500 F.3d 500, 508 (6th Cir. 2007).

2. Even when testimonial, however, an out-of-court statement implicates the Confrontation Clause only if it is being offered to assert the truth of the matter stated. *United States v. King*, 865 F.3d 850 (6th Cir. 2017). Considering the many reasons a statement may be relevant to a particular case, it can sometimes be difficult to discern whether the statement is being offered for its truth (as

opposed to another purpose). 6 Michael H. Graham, *Handbook of Federal Evidence* § 801:5 (8th ed.) (2019) ("No aspect of the hearsay rule is as misunderstood as the second part of the definition of hearsay—that the out of court statement is offered in evidence to prove the truth of the matter asserted—which McCormick describes as a complicated and confusing condition.") (internal quotation marks omitted).

That often hazy picture comes into focus here, however, by analogy to *King*. King, an attorney, approached Marcus Terry, a man King assumed was a drug dealer, to offer his services in helping Terry launder his alleged drug-deal money. *King*, 865 F.3d at 849. That assumption proved to be wholly incorrect. For unbeknownst to King, Terry was a confidential informant for the police. *Id.* And a good one at that, it turned out, as Terry recorded several conversations during which King offered to help launder substantial amounts of drug money Terry claimed to possess. *Id.* at 850. In prosecuting King, the government sought to introduce these recorded conversations into evidence, without making Terry available for cross examination. Rejecting King's Confrontation Clause challenge, we emphasized the fact that the statements were not introduced "for the truth of the matter," that is, to show that Terry possessed the money; indeed, he did not. Rather, they were utilized to show that King *believed* Terry was looking for someone to launder his money, safely avoiding any tension with King's confrontation right. *Id.* at 851; *see, e.g.*, *Doxey*, 833 F.3d at 708 (holding that a defendant's Confrontation Clause rights are not violated when the "CI [confidential informant] did not testify and none of the CI's statements were offered for their truth at trial").

Much the same is true here. Before trial, Parsons pled guilty to trafficking drugs. And the recording of Parsons was used to show not that the informant wanted drugs, but, instead, that Parsons believed she did and, in turn, that Parsons intended to meet that demand while possessing

a firearm. That the informant's statements thus were not introduced for the truth of the matter dooms Parsons's Confrontation Clause challenge—and, by implication, his hearsay objection as well. *See* Fed. R. Evid. 801(c)(2) (defining hearsay as a statement that is "offer[ed] in evidence to prove the truth of the matter asserted in the statement").

It makes no difference that the recording helps establish the truth of the matter that Parsons committed an act that was an element of a criminal offense. We answer Parsons today the way we bluntly responded to that same argument in *King*: "That's not how it works." 865 F.3d at 851. King also argued that the recordings at issue there were "offered for the truth of the matter asserted, because they went directly to establishing an element of the offense." *Id.* at 851 (internal quotation and citation omitted). Most evidence, of course, will help prove (or disprove) one element or another. Why else introduce it, after all? But as an evidentiary matter, a statement can both help prove an element of an offense and, as here, not be asserted for the truth of the statement's content. *Id.*

3. Even if Parsons's Confrontation Clause rights were violated, the violation amounted to, at most, harmless error. Setting aside the evidence admitted in purported violation of Parsons's confrontation right, the record still reveals "substantial evidence" establishing Parsons's guilt, meaning there is "no reasonable probability" that the constitutional violation made a difference to the jury's verdict. *United States v. Henderson*, 626 F.3d 326, 334 (6th Cir. 2010) (citations omitted).

From Parsons's residence, officers seized three guns, digital weighing scales, and small bags typically used in drug sales. Two of the guns were handguns. One, which matched the gun Parsons was handling in the video, was found in Parsons's bedroom lying near "high-velocity rounds" typically used to pierce body armor, a few feet away from two small bags of crystal meth.

A second handgun was found with a live high-velocity round in the chamber. And a third gun, a SKS rifle, was found in Parsons's bedroom, with ammunition two feet away. In addition, officers discovered in the same bedroom, on top of a gun safe, a surveillance system that fed into a monitor (both of which were also present in the video). And when Parsons attempted to flee, officers found the handgun chambered with a live round in Parsons's flight path, crystal meth on the ground where he was apprehended, and hydrocodone on his person.

As to the video, even with the confidential informant's statements edited out from the recording, Parsons's own words evinced an intent to sell the drugs to the confidential informant while, the video depicted, Parsons was handling a gun similar to the handgun seized later. So even assuming a Confrontation Clause violation from the admission of the confidential informant's statements, any error was harmless, in view of the remaining evidence of Parsons's guilt. *See United States v. Powers*, 500 F.3d 500, 510 (6th Cir. 2007) (holding a Confrontation Clause violation in admitting an informant's statements to be harmless error because the defendant's own words in the recording "evinced his intent to sell the drugs" to the informant).

*Sentencing Enhancement.* Moving on to his sentence, Parsons argues that the district court erred in applying a two-level enhancement under U.S.S.G. § 3C1.1 for obstructing justice. We review *de novo* the district court's legal interpretations of the Sentencing Guidelines, and we review the district court's factual conclusions for clear error. *United States v. Thomas*, 933 F.3d 605, 608 (6th Cir. 2019). But as the government notes and *Thomas* describes extensively, our cases, it is fair to say, leave room for debate over the standard we apply when reviewing the district court's *application* of the Sentencing Guidelines to the facts. *Id.* at 608–610. Sometimes we have said clear error applies, other times *de novo*. *Compare United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002) (applying clear error review to a district court's application of the

Guidelines), *with United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018) (applying *de novo* review instead). Perhaps the answer depends upon the Guidelines provision in question. *See Burford v. United States*, 532 U.S. 59, 64–66 (2001) (determining the standard of review for a Guideline based on logic specific to that Guideline). For today's purposes, it is enough to note *Thomas*'s wisdom to leave the issue for another day. *Id.* at 610. As, like there, even under *de novo* review, the sentencing challenge here fails. That is, Parsons has not shown that the district court erred in applying the two-level obstruction of justice enhancement to his sentence.

Section 3C1.1 applies when the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing" of the defendant. U.S.S.G. § 3C1.1. At issue are Parsons's instructions to his wife and friends to threaten two FBI Task Force Officers involved in his prosecution, his direct threat to kill the confidential informant, and his expressed desire to either kill the officers involved, or his direction to others to do so. Threats alone are enough to justify the enhancement. *United States v. Brown*, 237 F.3d 625, 627–28 (6th Cir. 2001) (upholding a district court's application of obstruction of justice enhancement when a defendant who suspected he was under investigation threatened a potential witness); *see also United States v. Kamper*, 748 F.3d 728, 744–45 (6th Cir. 2014) (upholding a district court's imposition of an obstruction of justice enhancement when a defendant spread rumors in a jail that a witness was a "snitch" knowing how the inmates would react to snitches in jail). Indeed, the very first example in the Guideline Application Notes discussion of situations where the enhancement applies is instances of "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1 cmt. n.4; *see also United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019)

(en banc) (per curiam) (holding that the Sentencing Guidelines commentary is authoritative unless it is plainly erroneous or inconsistent with a Guideline).

Parsons offers no compelling response. He characterizes his statements as nothing more than harmless bluster. Perhaps sophomoric taunts would not rise to the level of obstruction of justice. *See United States v. Archer*, 671 F.3d 149, 166–68 (2d Cir. 2011) (reversing the application of an obstruction of justice enhancement when the defendant, via text, accused a friend who might testify against him of being a "pussy"). But that is worlds apart from what Parsons did here—attempting to induce others into threatening or even killing law enforcement officials involved in his prosecution and making explicit threats about killing a government informant.

He likewise describes his statements as having no intended consequences. But it is difficult to read them that way when, in the very same conversation, Parsons also directed his audience to continue to engage in more routine criminal acts like selling drugs and firearms. Just as with that nefarious activity, it is fair to assume that Parsons had some expectation that his instructions to threaten or even kill witnesses and officers would also come to pass. And it may be more than an unhappy coincidence that, just months after Parsons's arrest, his acquaintance, John Hall, murdered one of the officers who investigated Parsons. While no one has alleged that Parsons is directly to blame, that tragic eventuality confirms why Parson's threats cannot be swept aside as merely a man "running his mouth."

It makes no difference, it bears adding, whether Parsons's statements had any "actual effect" on federal law enforcement efforts. By its plain terms, § 3C1.1 applies to "attempted" obstruction as well as successful obstruction. To be sure, as Parsons notes, the Seventh Circuit held in *United States v. Griffin* that a defendant's *misstatement* to law enforcement qualifies for the § 3C1.1 enhancement only if the statements "actually obstruct or impede" law enforcement

9

efforts. 310 F.3d 1017, 1023 (7th Cir. 2002) (quoting U.S.S.G. § 3C1.1 cmt. n. 4(g)). That conclusion is clear from Application Note 4(G), which explicitly requires such misleading statements to have "significantly obstructed or impeded" law enforcement efforts. U.S.S.G. § 3C1.1 cmt. n. 4(g). But the same is not true for *threats*. Application Note 4(A) makes plain that, as to a threat to a witness, the enhancement applies regardless whether the defendant is actually "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or *attempting* to do so" (emphasis added). U.S.S.G. § 3C1.1 cmt. n. 4(a). *See also United States v. Robinson*, 813 F.3d 251, 263 (6th Cir. 2016) (upholding a district court's imposition of a two-level obstruction enhancement for a defendant's attempt to threaten government witnesses).

Equally unavailing is Parsons's assertion that, for § 3C1.1 to apply, there must be some likelihood of the witnesses learning of the threat. "[T]he plain language of Application Note 4(A) to U.S.S.G. § 3C1.1 [] provides for an enhancement when defendants attempt to indirectly threaten a witness" through a third party, even where the witness may never learn of the threat. *United States v. Talley*, 443 F. App'x 968, 972–73 (6th Cir. 2011). We have thus upheld the imposition of an enhancement for witness threatening where the defendant induced another to harass a witness. *Id.* at 972; *Kamper*, 748 F.3d at 744. That is exactly what Parsons was attempting to do.

As a final point, Parsons argues that since the subjects of his threats would not learn of them, the obstruction of justice enhancement necessarily cannot apply. As support, he cites the Fourth Circuit's holding in *United States v. Brooks*, 957 F.2d 1138, 1149–50 (4th Cir. 1992). But we previously have read *Brooks* as merely distinguishing between a "frustrated outburst[]" and an intended threat, as in *Brooks* the defendant's statements were serendipitously overheard by a law enforcement official who reported them. *United States v. Galloway*, 57 F.3d 1071, 1995 WL

329242, at *4 (6th Cir. May 31, 1995) (unpublished table decision).  It was, therefore, unclear that the defendant intended the statements to be received by anyone.  *Id*.  Here, on the other hand, Parsons was speaking directly to his intended audience.

### III.  CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.

11