RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0375p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

>*Plaintiff-Appellee,*

*v.*

No. 06-1684

JETHRO RENE POWERS,

>*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 05-90021—John Corbett O'Meara, District Judge.

Argued: July 24, 2007

Decided and Filed: September 12, 2007

Before: COLE and GILMAN, Circuit Judges; MARBLEY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Jonathan M. Epstein, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant. Jennifer Peregord Sinclair, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Jonathan M. Epstein, Bradley R. Hall, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant. Jennifer Peregord Sinclair, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

ALGENON L. MARBLEY, District Judge. Defendant-Appellant Jethro Rene Powers appeals his conviction for possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). The Sixth Amendment's Confrontation Clause, as interpreted by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2004), requires that a defendant be able to confront his accuser if the accuser's "testimonial" statements are introduced at trial. Powers contends that the district court violated his Sixth Amendment rights by allowing police officers to testify regarding statements made by their Source of Information ("SOI")[1] relating to "Powers's

_____

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

[1]Also known as a Confidential Informant ("CI").

1

drug-selling background, the type and weight of the narcotics, the identification of the vehicle driven by Powers, the time and location of meeting places and most importantly, the SOI's eventual identification of Powers." (Def.'s Brief at 5.) The Government did not call the SOI as a witness at trial and thus, Defendant could not cross-examine him.

Defendant also contends that the district court abused its discretion and acted in a biased manner when it consistently interrupted, derided, and truncated defense counsel's cross-examination of witnesses. Defendant asks this Court to reverse his conviction and remand this case for a new trial. For the reasons discussed below, we **AFFIRM** Defendant's conviction.

## I. BACKGROUND

The relevant facts are not disputed.

On December 15, 2004, after a trial lasting slightly longer than a day, a jury in the Eastern District of Michigan returned a guilty verdict against Defendant for violating 21 U.S.C. § 841(a)(1), after finding that he possessed, with the intent to distribute, approximately one kilogram of cocaine.

In September 2004, the SOI notified a narcotics task force consisting of officers from the Drug Enforcement Agency ("DEA"), Michigan State Police, and Detroit Police Department that Defendant was trafficking in significant quantities of cocaine. Subsequently, the task force set up a sting operation targeting Defendant on September 20, 2004. At the direction of the police, the SOI called Defendant and arranged to purchase two kilograms of cocaine from him in the parking lot of a Circuit City store in Detroit, Michigan. The SOI, along with Michigan State Police undercover Officer Keely Cochran ("Officer Cochran"), traveled to the location of the transaction. Detroit Police Officer Michael Patti ("Officer Patti") performed surveillance from a nearby site.

The SOI exchanged several cellular telephone calls with Defendant, some of which the SOI recorded using a police-issued earpiece recorder. The recordings indicate that Defendant was in possession of one kilogram of cocaine and was attempting to procure another kilogram to satisfy the amount that the SOI requested. On the recordings, Defendant also stated that he was driving a white van. Approximately an hour-and-a-half later, Defendant and the SOI agreed to move the location of the transaction to the nearby Home Depot parking lot because the Circuit City store was about to close. Subsequently, Defendant maneuvered his white van along side the car occupied by the SOI and Officer Cochran. Without the SOI and Defendant engaging in a drug transaction, police officers stopped the van, arrested Defendant, and discovered approximately one kilogram of powder cocaine in the vehicle.

At trial, the Government called three witnesses: Officer Patti, Officer Cochran, and Agent Ponman.[2] During their testimony, Officers Patti and Cochran offered information learned from and statements made by the SOI, some of which were direct quotes from the SOI and some of which represented information that the officers learned only through their interactions with the SOI. The district court admitted these statements over a myriad of hearsay objections and two Confrontation Clause objections because it found that, in general, these statements were "not offered for the truth of the matter stated." The objectionable information learned from the SOI can be divided into three main categories: (1) background information on the Defendant—i.e, that Defendant was a well-known cocaine dealer—ostensibly admitted to show why the officers undertook the sting operation;

---

[2] Agent Ponman participated in the organization of the sting operation and searched the white van after Defendant's arrest.

(2) the SOI's identification of the white van as Defendant's vehicle; and (3) the SOI's identification of Defendant.[3]

During the course of the trial, the court interjected twenty-six times during the one-hundred seventeen minutes defense counsel spent cross-examining the Government's witnesses.[4] Most of these interjections can be characterized as the court's *sua sponte* objections to the relevance of defense counsel's questions or the court's attempt to curtail counsel's continued desire to ask duplicative questions. On some occasions, the court commented that it did not see the relevance of defense counsel's line of questioning, and on others, the court simply told counsel to "go on to something else."[5] In addition, after defense counsel questioned Officer Cochran regarding the telephone calls that the SOI did not record, the court commented that: "I think this witness is testifying honestly with regard to what he knows and doesn't know. I don't think this is impeaching. I don't think it's a credibility question, and I would like to you go on to something else." (J.A. 270.) Moreover, on two different occasions, the court threatened to impose sanctions against defense counsel if he did not cease certain lines of questioning. After the jury returned a guilty verdict against Defendant, the district court sentenced him to sixty-three months' incarceration, the bottom of the applicable Sentencing Guidelines range.

## II. STANDARD OF REVIEW

### A. Confrontation Clause

Defendant asks this Court to review the admission of the SOI's statements de novo. The Government concedes that de novo review is normally the appropriate standard by which to review a Confrontation Clause challenge, but claims that because Defendant did not object to each instance in which the district court admitted information learned from the SOI into evidence, plain-error review should apply.

Generally, we review alleged violations of the Confrontation Clause de novo. *United States v. Robinson*, 389 F.3d 582, 592 (6th Cir. 2004). If, however, a defendant does not object to an error in the district court, plain-error review applies. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Hadley*, 431 F.3d 484, 498 (6th Cir. 2005) ("Because Defendant raised only a hearsay objection to these statements at trial, and did not challenge their admissibility on constitutional grounds, our review here is governed by the plain error standard."). In conducting such a review, we reverse only when we conclude that there is an: "(1) 'error,' (2) that is 'plain,' and

---

[3] Officer Patti testified, "I could hear on the transmitter the SOI said I think this is our—this is my guy in the van . . . . I got confirmation via the transmitter again that it was confirmed this is the target . . . I heard follow me. And directly afterwards, I heard that's him. He wants us to follow him and that's the van." (J.A. 163-64.)

Officer Cochran testified that the SOI "sat up and stated 'that was him'" in reaction to seeing Defendant drive by in the white van. (J.A. 263.)

[4] On average, this amounts to one interruption every four-and-one-half minutes.

[5] For example, the district court made the following interjections:

"All right. This is not helping the jury. Go onto something else." (J.A. 208.)

"Let's go onto something else. This is wasting the jury's time." (J.A. 211.)

"I think that we're pretty much at the end of my tether on this kind of cross-examination . . . ." (J.A. 220.)

(3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (citations omitted). If we determine that these three criteria are met, we "may then exercise [our] discretion to notice a forfeited error, but only if . . . the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 467.

Defendant specifically raised a Confrontation Clause objection twice during the trial. He objected on constitutional grounds when Officer Patti testified regarding the SOI's identification of the white van and again when Officer Patti testified that the SOI identified Defendant as the target of the sting operation. Therefore, by the Government's own acknowledgment, we are obligated to review Defendant's second and third categories of objections—the SOI's identification of the white van and his identification of Defendant—de novo.

The question remains, however, whether the plain error standard or the de novo standard should apply to the first category of admitted material, i.e., the SOI's description of Defendant's prior criminal activities. Defendant argues that the plain error standard is inappropriate because his repeated hearsay objections were specific enough to put the trial court on notice of its alleged error. *Hadley* plainly rejects this argument. 431 F.3d at 498. Defendant further asserts that because the district court repeatedly silenced defense counsel before he could articulate the basis for his various objections, we must apply heightened scrutiny to our review. Defendant's argument has merit. Once he objected to the out-of-court statements on the basis of the Confrontation Clause, and the district court denied the objection, it would have proven fruitless to re-object on the same basis each time a witness proffered the SOI's out-of-court statements. Moreover, subsequent to Defendant's Confrontation Clause objections, the district court consistently overruled Defendant's objections without giving him an opportunity to state the legal basis for these objections. Defendant's first objection under the Confrontation Clause, however, came substantially after Officer Patti testified regarding the SOI's knowledge of Defendant's criminal history. Given that Defendant did not object to this testimony on the basis of the Confrontation Clause at the time it was admitted, we will employ the plain-error standard when reviewing the first category of objectionable testimony.

In the end, the standard of review is of little consequence because, as discussed below, although Confrontation Clause violations occurred in this case, they amount to harmless error because of the overwhelming evidence against Defendant. *See, e.g., Robinson*, 389 F.3d at 593; *United States v. Savoires*, 430 F.3d 376, 382 (6th Cir. 2005).

### B. Judicial Bias

Defendant asks this Court to review the district court's allegedly biased conduct under an abuse-of-discretion standard. The Government claims that because Defendant failed to object to the district court's conduct during trial, we must review for plain error only. Defendant responds that any objection to the district court's conduct would have exacerbated the hostility he already was facing.

Ordinarily, we review a district court's conduct during a trial under the abuse-of-discretion standard. *McMillan v. Castro*, 405 F.3d 405, 409 (6th Cir. 2005). Where the Defendant does not object to the district court's conduct during the trial, however, we employ the plain-error standard. *United States v. Hynes*, 467 F.3d 951, 957-58 (6th Cir. 2006). In *United States v. Sims*, 46 F. App'x 807, 814 (6th Cir. 2002), we hinted that plain-error review may be inappropriate if the defendant argues that objecting to the judge's conduct during trial would have caused him to face additional hostility. ("Because defense counsel did not object to the district court's remarks at trial and [the defendant] does not argue that to do so would have exacerbated the situation, we review for plain error.") As discussed in detail below, it is unnecessary for us to decide, under the facts of this case, which standard of review is appropriate.

### III.  ANALYSIS

### A. Confrontation Clause

Defendant argues that his conviction cannot stand because the district court erred in admitting certain statements made by a confidential informant.  We agree that under applicable Supreme Court precedent and our decision in *United States v. Cromer*, 389 F.3d 662, 670-71 (6th Cir. 2004), the admission of the SOI's out-of-court statements violated the Defendant's Confrontation Clause rights.  This violation, however, amounts only to harmless error because each element established by the improperly admitted evidence was proven overwhelmingly through other evidence.

The Confrontation Clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. Const. amend. VI.  Prior to *Crawford v. Washington*, 541 U.S. 36 (2004), *Ohio v. Roberts*, 448 U.S. 56 (1980), governed the Sixth Amendment review of the admissibility of out-of-court statements against an accused at trial.  Under *Roberts*, we admitted an out-of-court statement if it was adequately reliable—i.e., if it fell under a hearsay exception and had "particularized guarantees of trustworthiness." *Id.* at 66.

Under *Crawford*, the Supreme Court reconceptualized the Confrontation Clause and affirmed a defendant's right to cross-examine those persons that accuse him of wrongdoing.  The Court held that "testimonial statements" offered into evidence from witnesses who are not present to testify must be excluded if offered against the accused to establish the truth of the matter asserted. *Crawford*, 541 U.S. at 68.  The Court declined to "spell out a comprehensive definition of 'testimonial,' but stated that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*  The Court further commented that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.*

In *Davis v. Washington*, 126 S. Ct. 2266 (2006), the Supreme Court further defined "testimonial" in a narrow set of circumstances.  As discussed by this Court in *United States v. Arnold*, 486 F.3d 177, 187 (6th Cir. 2007) (en banc), the Supreme Court in *Davis* held that statements are non-testimonial

> when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* (quoting *Davis*, 126 S. Ct. at 2273-74).

*Davis* employed this rule in the context of two typical types of victim/witness statements: (1) statements made during 911 telephone calls in which a declarant incriminates a defendant who was in the defendant's vicinity at the time of the call; and (2) statements taken by the police at the scene of a crime in the absence of an ongoing emergency.

The Supreme Court found that, in the first instance, if the primary purpose of the police action was not to elicit information regarding a past crime, but rather to respond to an *immediate* and *ongoing* threat to the *safety* of the declarant, the declarant's statements are non-testimonial. *See Davis*, 126 S. Ct. at 2273.  In the second instance, where there is no imminent threat of danger to the

declarant, the Supreme Court held that the declarant's statements are testimonial if they relate to a past criminal occurrence relevant to later criminal prosecution. *Id*. at 2274. In *Arnold*, 486 F.3d at 177, this Court, sitting en banc, applied *Davis*'s ongoing threat rationale to a factually similar case. We concluded that a victim's statements during a 911 telephone call were made during an ongoing emergency, where the victim had fled from an attacker brandishing a firearm. There, given that the safety of the declarant was in immediate jeopardy, we held that her statements were non-testimonial. *Id*. at 185. Further, we concluded that the statements she made to the police after they arrived at the scene of the incident were non-testimonial because an ongoing threat to her safety still existed. *Id*. at 186.

Because the rule expounded in *Davis* and followed in *Arnold* narrowly applies to cases involving ongoing emergencies, the case at bar is inapposite. There is a continuum that exists between cases such as *Davis* and *Arnold* on the one hand, and *Cromer* on the other. The statements at issue in *Davis* and *Arnold* were made during an ongoing emergency precipitated by the defendants' criminal conduct. In contrast, the statements in *Cromer* did not occur in the context of any emergency, but related to past criminal conduct; indeed, they were elicited as part of the government's investigation into the defendant's past drug activity. The facts of this case are not precisely analogous to those in *Cromer*, but they are much closer to *Cromer* on the testimonial/non-testimonial continuum than to *Davis* and *Arnold*. First, the SOI's statements about Defendant's prior criminal history were made before the sting operation and helped form the basis for that operation. Second, although the SOI's identification of Defendant and his van were made during the commission of a crime—i.e., Defendant's possession with intent to distribute cocaine—there was no emergency. At the time the SOI identified Defendant in the white van, the SOI was observing the scene from the protection of a police vehicle, and never had face-to-face contact with Powers. The record does not disclose any reason to believe that the SOI, or anyone else for that matter, was in imminent danger of physical harm. Accordingly, because there was no emergency, which was pivotal in both *Davis* and *Arnold* to finding that the witness statements were non-testimonial in nature, we must look beyond *Davis* to determine whether the SOI's statements were testimonial. We turn, therefore, to *Cromer*.

In *Cromer*, we held that a CI's statements were testimonial and that therefore the district court erred in admitting them at trial. In particular, we concluded that, based on the nature of what CIs do and the purposes for which law enforcement uses them, statements by CIs are generally testimonial in character. We stated:

> Tips provided by confidential informants are knowingly and purposely made to authorities, accuse someone of a crime, and often are used against the accused at trial. The very fact that the informant is confidential—i.e., that not even his identity is disclosed to the defendant—heightens the dangers involved in allowing a declarant to bear testimony without confrontation. The allowance of anonymous accusations of crime without any opportunity for cross-examination would make a mockery of the Confrontation Clause."

*Cromer*, 389 F.3d at 675.

This is not to say that every CI's statement offered through a police officer at trial amounts to a Confrontation Clause violation. For example, non-accusatory statements such as self-descriptions of the CI and his lifestyle, which offer the jury context in which to view the evidence, do not implicate the Confrontation Clause. Additionally, as noted in *Cromer*, testimony "provided merely by way of background," or to explain simply why the Government commenced an

investigation, is not offered for the truth of the matter asserted and, therefore, does not violate a defendant's Sixth Amendment rights. *Id.* at 676.

The holding of *Cromer* is not in conflict with the rule set forth in *Davis* and applied in *Arnold*. First, *Cromer* did not hold that *every* CI statement is testimonial in nature. Second, the Supreme Court fashioned the rule in *Davis* in the context of the *narrow* factual scenario involving an ongoing emergency where the safety of a declarant is in danger of imminent physical harm. *Davis*, 126 S. Ct. at 2273. ("Without attempting to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial . . . ."). Absent such an imminent threat, as the Supreme Court discussed in *Davis*, any police questioning would serve an investigatory purpose, and thus, any incriminating testimony elicited would be accusatory in nature. *Id.* at 2279 ("where [the declarant's] statements were neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation," any incriminating statements could only relate to a past crime, and thus they constitute accusations). Further, the rule in *Davis* applies only to an ongoing emergency with the threat of "immediate" danger. *Id.* at 2278. (noting that police must be inquiring into "what is happening" rather than "what happened" in order for the statements to be non-testimonial under the articulated rule). Our rule in *Cromer*, while not impinging on the safety and immediacy concerns of the Supreme Court in *Davis*, preserves the right of a defendant, consistent with *Davis*, to confront those who accuse him of wrongdoing by holding as testimonial statements elicited for the primary purpose of investigating and prosecuting a crime.

In *Cromer*, we examined three categories of objectionable statements made by an out-of-court CI in order to determine if they violated the Confrontation Clause. First, the defendant objected to the CI's statement that the defendant's hangout was a "residence associated with selling drugs." *Id.* We held that this statement constituted mere background information because it was offered to show why the officers obtained a warrant for that residence and not as an accusation against the defendant because he did not reside at the house in question. *Id.* Second, the defendant objected to the introduction of certain CI statements that identified the defendant as a person associated with the residence under investigation for drug activity. *Id.* We determined that these statements were not offered as background testimony, but rather their purpose "could only have been to help establish" that the defendant had been involved in illegal drug activity. *Id.* Third, the defendant objected to the CI's physical description of the defendant. We held that this description was offered for the purpose of establishing the truth of the matter asserted, namely, that the defendant, who met the description, had participated in the illegal activity. *Id.* at 678. Thus, we reversed the defendant's conviction after finding that the second and third categories of statements violated the defendant's Sixth Amendment rights.

As in *Cromer*, in the case *sub judice*, Defendant Powers notes three categories of statements made by the SOI, which the district court admitted into evidence: (1) background information on the Defendant—i.e., that Defendant was a well-known cocaine supplier; (2) the SOI's identification of the white van as the Defendant's vehicle; and (3) the SOI's identification of Defendant.

*Cromer* plainly establishes that the second and third categories constitute Confrontation Clause violations. The Government introduced the SOI's identification of the white van for the primary purpose of showing that the person who claimed to have drugs that he was willing to sell to the SOI was in fact Defendant. The prosecution offered the SOI's positive identification of the Defendant for the truth of the matter asserted, namely, that Defendant was the "target" with whom the SOI had intended to set up the sting operation. Because the SOI's identification of both the van and Defendant were testimonial, out-of-court statements, offered to establish the truth of the matters asserted, and Defendant was not provided an opportunity to cross-examine the SOI, Defendant's Sixth Amendment confrontation right was violated.

Whether the first category of testimony, the background information regarding Defendant's previous illegal activities provided by the SOI, violates the Confrontation Clause is a closer question. At trial, Officer Patti testified that the SOI told the police that he "had been dealing with [Defendant] in the city of Detroit for a number of years, and [he] was a major supplier of cocaine to the SOI." (J.A. 147.) The Government contends that it offered this information not for the truth of the matter, but rather to show why the police decided to conduct a sting operation against Defendant. As such, the Government asserts that the SOI's statements regarding Defendant's criminal history are "background information" as defined in *Cromer*. The Government alleges that Defendant's criminal history was "proper background evidence" because it "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000).

The Government's argument is without merit. First, the *Hardy* Court dealt with what constitutes proper background evidence for admission under Federal Rule of Evidence 404(b); the Court did not state that "proper background" evidence under Rule 404(b), a relevancy rule, is admissible even if it violates the Confrontation Clause. Therefore, *Hardy* is inapplicable.

Second, details about Defendant's alleged prior criminal behavior were not necessary to set the context of the sting operation for the jury. The prosecution could have established context simply by stating that the police set up a sting operation in which the SOI was to purchase narcotics from Defendant. In *Cromer*, this Court found that the mere act of a CI identifying the defendant as a person who frequented a "drug residence" violated the Confrontation Clause. Thus, as a logical extension, specifically stating that Defendant is a major supplier of cocaine does so as well.

Even though the admission into evidence of all three categories of objectionable statements constitutes a violation of Defendant's Sixth Amendment rights, we are not compelled to remand this matter for a new trial because the violations amount only to harmless error. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (concluding that, on direct appeal, a constitutional error such as a Confrontation Clause violation is harmless only if it was harmless beyond a reasonable doubt); *Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005) ("Confrontation Clause violations are subject to harmless error review."). The Government presented evidence that established, beyond a reasonable doubt, both the identity of the Defendant and the fact that he was driving the white van, i.e., the second and third categories of objectionable testimony. Officer Cochran, who was physically next to the SOI, and Officer Patti, who observed the scene from a nearby location, both testified that Defendant was the individual driving the white van. They further testified that Defendant actually was removed from the white van, which contained the kilogram of cocaine in question, thus establishing his identity.

Defendant could argue that without the SOI's testimonial statements the Government could not have proven beyond a reasonable doubt that he intended to distribute the cocaine. This argument lacks merit for two reasons. First, Defendant's own words, as played for the jury in the recorded conversations between Defendant and the SOI, evinced his intent to sell the drugs to the SOI. Second, based on the compelling evidence in this case, the jury could have readily convicted Powers under a constructive possession with intent theory. *See, generally Hadley,* 431 F.3d 515 (Sutton, J. concurring).

The first category of challenged testimony, the SOI's statements regarding Defendant's criminal history, also constitutes harmless error. Given the recorded statements of Defendant, combined with the fact that he was arrested in possession of the cocaine discussed in those recordings, the evidence against Defendant is overwhelming; thus, any Confrontation Clause violation relating to this background evidence is harmless. *See Savoires*, 430 F.3d at 382 (6th Cir. 2005) (holding that any violation of the defendant's Sixth Amendment rights as a result of the

prosecutor's use of an informant's statement as background evidence was harmless error where the evidence against defendant was compelling); *see also United States v. Jones*, 205 F. App'x 327, 342 (6th Cir. 2006). Moreover, as another safeguard against the prejudicial effect of this evidence, the district court twice instructed the jury that "the Defendant is on trial only for the particular crime charged in the indictment. Your job is limited to deciding whether the Government has proved the crime charged." This instruction served to decrease the likelihood that the SOI's description of Defendant's past activities had an adverse impact on the jury. Thus, based on the foregoing analysis, although the district court erred when it admitted certain testimonial statements of the SOI, this error was harmless.

## B.  Judicial Intervention

Defendant next argues that the district court erred when it repeatedly interjected during defense counsel's cross-examinations. The Government responds that the district court did not abuse its discretion "by attempting to keep counsel for the parties focused on" relevant issues. Although Defendant does not make this explicit distinction in his brief, the case law he cites makes it clear that he asserts two separate legal arguments: (1) the district court deprived him of his right to a fair trial by repeatedly interrupting defense counsel's cross-examination of government witnesses; and (2) the district court exhibited impermissible bias in his treatment of defense counsel.

### 1.  District Court's Comments During Trial

As discussed above, we have not yet decided the appropriate standard of review—abuse of discretion or plain error—governing instances in which a defendant did not object to the district court's conduct at trial but posits, on appeal, that to have done so would have subjected him to additional judicial hostility. It is unnecessary, however, for us to do so in this case. As in *United States v. Hynes*, 467 F.3d 951 (6th Cir. 2006), a case very similar to this action, including the same presiding district court judge, a review of the entire record shows that although the district court came dangerously close to tainting the fairness of Defendant's trial, regardless of the standard of review employed, the Court did not commit reversible error when it interrupted the proceedings to object *sua sponte* or to expedite the trial process.

A trial court judge is "more than a mere arbitrator to rule on objections and instruct the jury." *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979). He may interject himself into the trial, speak to counsel, and question witnesses in order to clear up confusion regarding the evidence or aid in its orderly presentation. *McMillan v. Castro*, 405 F.3d 405, 410 (6th Cir. 2005). Accordingly, we must examine whether the district court's conduct fell so "demonstrably outside" the acceptable range of judicial behavior such that it amounted to "hostility or bias" toward Defendant. *Id.*

In *Hickman*, one of the few cases to find reversible error due to the conduct of a trial court, we set forth three factors that appellate courts should examine when determining whether a district court exceeded its authority by interjecting during trial: (1) whether the trial is "lengthy" or "complex," such that the court's intervention might help clarify issues and facts for the jury; (2) whether counsel are "unprepared or obstreperous" such that the facts become muddled and the district court needs to clarify the issues for the jury; and (3) whether a witness becomes inadvertently confused or is difficult to deal with such that judicial intervention may add increased efficiency to the trial process. *Hickman*, 592 F.2d at 933. In addition, one of the most crucial parts of our inquiry is the manner in which the district court chose to interject itself; it is important that the district court act with a neutral, unbiased demeanor when addressing counsel and witnesses. *Id.* The trial court should not continuously intervene on the side of only one of the parties. *Id.* at 934.

Although the court's conduct during trial was less than ideal, an examination of the entire record indicates that the court did not exhibit any partiality constituting reversible error. Although

this case was neither lengthy nor complex, nor did the witnesses display any confusion or difficulty, the record reflects that counsel often asked repetitive and irrelevant questions. Most of the court's comments can be construed as attempts to keep the parties focused on the issues related specifically to the crime charged and to prevent counsel from asking repetitive questions. Of the district court's twenty-six comments to which Defendant objects, most take the following forms: (1) "not helping the jury;" (2) "move on to something else;" or (3) "please don't repeat your questions over and over." One of the main thrusts of defense counsel's cross-examinations involved the number and timing of the telephone calls between the SOI and Defendant. After giving defense counsel ample leeway to explore these areas of inquiry, the district court curtailed counsel's opportunity to delve further into the exact timing and number of these calls because counsel's questions were repetitive and, at best, only tangentially relevant to the crime charged. For example, the trial court responded to defense counsel's continued questioning regarding the number of phone calls exchanged between the SOI and Defendant by stating:

> That's his testimony. Come on, don't – let's not question him on six. All of the other testimony has said there's six. The only problem I have is that you said by the SOI, and I sort of had the impression there was testimony that some of them were made by somebody else to him, but there were – there's no question, so far that I can imagine, about whether the numbers was 6 or 25 and let's not waste time on that.

(J.A. 264-65.)

Although Defendant characterizes this statement as an act of hostility toward defense counsel, as well as an example of judicial overreaching, he neglects to mention that the district court's comments occurred immediately following defense counsel's decision repeatedly to ask Officer Cochran how many phone calls the SOI exchanged with Defendant.[6] Although we find it troubling that the district court appears to have commented on the credibility of a witness, we recognize that the court was within its discretion to move defense counsel along from a repetitive and irrelevant line of questioning.

Although the trial court's behavior was not a model of decorum given that it commented on witnesses' testimony and took an arguably hostile tone toward counsel, the record does not reflect that the court was biased against Defendant. In *Hickman*, we reversed a defendant's conviction because the trial court took an anti-defendant tone, interrupted defense witnesses, re-directed witnesses on behalf of the prosecution, rarely ruled on the objections of counsel, and cut-off defense counsel during his closing argument. *Id.* at 934-35. In this case, the district court did not engage in this sort of behavior. It did not conduct extensive examinations of witnesses. It did not foreclose

---

[6]      Q: During the investigation, how many phone calls were made by the SOI, please?

A: Six, sir.

Q: Exactly six; is that correct?

A: Yes, sir, I believe it is.

Q: I'm sorry?

A: Yes, sir, I do believe it is six.

Q: Well, Officer –

(J.A. 264.)

avenues of cross examination that had not already been explored. It timely ruled on the objections of counsel. Although the court frequently interjected with what the record suggests was an exasperated tone, the nature and scope of the court's comments were quite narrow; the court cautioned the parties to move on from irrelevant areas of inquiry, refused to allow counsel to ask duplicative questions, and sought out stipulations of undisputed facts. Although the court told defense counsel that counsel had only three minutes remaining in his closing argument, defense counsel had already exceeded the time that the Government used in its closing. In addition, the district court's decision to threaten defense counsel with sanctions, which should have been made out of earshot of the jury, was made only after defense counsel's repeated failure to cease asking repetitive questions.

In addition, although the number of times the court interjected should be taken into account, the sheer volume of interjections in this case is not enough to constitute reversible error. *See, e.g., United States v. Tilton*, 714 F.2d 642, 644 (6th Cir. 1983) (finding no evidence of judicial error even though district court interrupted defense counsel nearly thirty times); *United States v. Smith*, 561 F.2d 8 (6th Cir. 1977) (holding that it was not reversible error for the trial court to pose more than two-hundred fifty questions to witnesses).

More importantly, the district court displayed equal impatience with both counsel. It frequently made similar comments to the Government such as: (1)"I don't understand why we're spending so much time introducing evidence . . . I don't know that we have to spend a lot of time with it, unless you've got something that I don't understand . . . ." (J.A. 173-74); (2) "This, Mr. Gilmer-Hill, is going too slowly. It's got to move." (J.A. 181); and (3) "Go onto something else." (J.A. 234); *see also* (J.A. 256-63.).

The conduct to which Defendant objects falls within the range of "acceptable, though not necessarily model, judicial behavior." *McMillan,* 405 F.3d at 410. The district court's conduct, although not exemplary, "did not short-circuit the defense strategy or evince favoritism toward the government." *Hynes*, 467 F.3d at 959. As in *Hynes*, "the record shows that the district court limited cross-examination solely to avoid 'confusion of the issues . . . or interrogation that is repetitive or only marginally relevant.' Those limitations were reasonable and fall well within the 'wide latitude' that trial courts are to be accorded." *Id.* at 960 (quoting *United States v. Van Arshall*, 475 U.S. 673, 679 (1986)). Despite the judicial intervention in this case, Defendant was able to elicit from witnesses the information that he sought and to present his theory of the case to the jury in a coherent fashion. *See Hynes*, 467 F.3d at 960 (citing *United States v. Gray*, 105 F.3d 956, 964-65 (5th Cir. 1997) (finding no reversible error where the district court's interventions "sometimes broke the flow of the defense presentation," but "[t]he relevant facts were brought to the jury's attention, and the defendants' counsel were able to interpret the facts favorably to their clients during closing argument")). Thus, Defendant's argument that the district court abused its discretion when it interjected during trial is without merit.

### 2. Judicial Bias/Hostility Toward Defense Counsel

Defendant also asserts that the aforementioned judicial conduct and treatment of defense counsel demonstrates impermissible judicial bias against him. None of the district court's comments constitutes judicial bias. The Supreme Court has stated that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not rise to the level of judicial bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

Defendant repeatedly cites one particular incident in which the district court commented to defense counsel that, "all lawyers are terrible liars." (J.A. 227.) The entire exchange went as follows:

> Mr. Barnett (defense counsel): I have no further questions, your Honor. Thank you very much. Well, I do have one. Yes, I'm a lawyer. I've got one. I got one question.
>
> The Court: Not Mr. Barnett, because I did it too when I practiced law, lawyers are terrible liars. They tell you one question and five minutes later they're going to their tenth question, but make it one, Mr. Barnett.

(J.A. 227-28.)

Viewing this exchange in its entirety, it is clear that the trial court was not attempting to denigrate defense counsel. Rather, he was commenting on all lawyers' habits, including his own, to ask multiple questions after stating that they will ask only one. After this exchange, defense counsel asked the witness two questions.

The case of *United States v. Tipton*, 11 F.3d 602 (6th Cir. 1993), is directly on point. In *Tipton*, the district court made ten inappropriate comments, including a remark that we characterized as a putdown of defense counsel. *Id.* at 611. Although we concluded that the district court's comments were "inappropriate" and "undermined defense counsel's credibility to some small degree," we held that these comments did not constitute reversible error. *Id.* at 612-13. In this case, as discussed above, the district court's comments were designed to expedite the trial, and while ill-advised, they were directed at both defense and government counsel in near equal measure. The trial court did not undermine defense counsel's credibility or hamper Defendant's defense in any material way.

Finally, as a measure against the possible prejudice of his comments, the trial court gave instructions to the jury that his comments from the bench regarding the presentation of the evidence should not impact their decision as to Defendant's guilt or innocence. *See McMillan*, 405 F.3d at 410; *see also United States v. Johnson*, 182 F. App'x 423, 434 (6th Cir. 2006) (holding that whatever negative impact the trial court's conduct may have had on the jury was "mitigated by several jury instructions informing them that any comments made by the district court should not influence their determination of guilt or innocence").

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's conviction.