NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0191n.06

No. 15-6315

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS** | | **FILED** |
| **FOR THE SIXTH CIRCUIT** | | Mar 29, 2017 |
| | | DEBORAH S. HUNT, Clerk |

UNITED STATES OF AMERICA,　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　**Plaintiff-Appellee,**　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　**ON APPEAL** FROM THE
v.　　　　　　　　　　　　　　　　　)　　UNITED STATES DISTRICT
　　　　　　　　　　　　　　　　　　　)　　COURT FOR THE EASTERN
DARRELL REYNOLDS,　　　　　　　　)　　DISTRICT OF KENTUCKY
　　　　　　　　　　　　　　　　　　　)
　　　　**Defendant-Appellant.**　　　　　)　　**OPINION**
　　　　　　　　　　　　　　　　　　　)

**BEFORE: NORRIS, GIBBONS, and ROGERS, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** Defendant Darrell Reynolds appeals his jury conviction on two counts of distributing pills containing hydrocodone in violation of 21 U.S.C. § 841(a)(1), and one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). He argues that the district court erred by (1) admitting certain testimony in violation of the evidentiary rules against hearsay and his Sixth Amendment right of confrontation, and (2) by refusing to provide the jury with certain instructions. For the reasons that follow, we **affirm**.

**I.**

A narcotics detective from the Knox County, Kentucky, Sheriff's Office engaged a confidential informant ("CI") to record himself purchasing narcotics from Reynolds. The CI was a paid informant, meaning he was working for law enforcement for cash.

On December 13, 2013, the detective searched the CI and outfitted him with marked money and a small video camera and then sent him to buy narcotics from defendant. After the

controlled buy, the CI gave the detective ten hydrocodone tablets that he had purchased and the remaining buy money. On January 8, 2013, the detective prepared the CI the same way and directed him to purchase ten more hydrocodone pills plus a handgun from Reynolds, which he did.

The prosecution played the video recordings of the transactions for the jury and entered the recordings into evidence. Although the combined audio and video recordings clearly capture a drug transaction, with defendant present, Reynolds points out that the video never explicitly showed him with possession of the narcotics or the gun. The audio portion captured the transactions involving the drugs and firearm clearly, and the detective testified that it was defendant's voice in the recording making the sale and one of the video recordings shows Reynolds speaking.

The CI did not testify at trial; it was suggested that he had died sometime during the period between the purchases and trial. The prosecutor asked the detective to explain why he began investigating Reynolds, to which he responded that he "had the information that [Reynolds] was selling illegal narcotics." Defense counsel objected on both Confrontation Clause and hearsay grounds, but the district court overruled the objection, stating that the question was proper and sought "to explain why [law enforcement] made certain decisions as it relates to an investigation, and so it is allowed to ask that question."

The detective testified that he sent the CI to Reynolds's house to make the controlled purchases. When asked how he knew where defendant lived, the detective said "other people in the community [told] me what was going on there" and that the CI "knew Darrell Reynolds and knew where he lived." During cross-examination, defense counsel returned to the subject of defendant's residence and asked the detective what he knew about it. The detective replied that

"people told me who was selling narcotics out of there and who I see—seen out in the yard several times." Defendant did not object at trial to the admission of the testimony about his residence, but on appeal he asserts that the admission of these statements also violated his Confrontation Clause rights and the evidentiary rules against hearsay.

Turning to defendant's claimed jury-instruction error, the recording of the first drug transaction captured the CI receiving a telephone call during which he arranged to purchase drugs from someone named Linda Poe. As it turns out, this was part of the CI's work with law enforcement. In a separate case, the same detective directed the CI to purchase narcotics from Ms. Poe, eventually leading to her arrest. This is relevant because defense counsel suggests that Ms. Poe's husband Robert Poe may have sold the narcotics and the firearm to the CI, and Reynolds was merely present during the transactions. To support this theory, defense counsel repeatedly highlighted two portions of the recording where the audio was garbled and suggested that those portions included references to Mr. Poe, and requested a jury instruction based on a "mere presence" defense. The district court refused, holding that the standard jury instructions adequately addressed defendant's defense theory and that the proposed instruction was confusing because it was adapted from Sixth Circuit pattern instructions for a conspiracy charge.

After a two-day trial, the jury returned a guilty verdict on all counts: two counts of drug distribution and one count of being a convicted felon in possession of a firearm.

## II.

Defendant appeals the district court's admission of the challenged testimony and its denial of his requested jury instructions.

## A. Admitted Testimony

"Generally, a district court's evidentiary rulings are reviewed for abuse of discretion." *United States v. Churn*, 800 F.3d 768, 774 (6th Cir. 2015) (quoting *United States v. Chalmers*, 554 F. App'x 440, 449 (6th Cir. 2014)). But when a defendant fails to preserve the issue by objecting at trial, we review for plain error. *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015).

Hearsay means a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The hearsay rule applies to most out-of-court statements, but with several exceptions. *See* Fed. R. Evid. 803. Usually hearsay evidence is not admissible. Fed. R. Evid. 802.

The Confrontation Clause prohibits the admission of out-of-court statements that are testimonial and offered for the truth of the matter asserted, unless "the declarant is unavailable, and . . . the defendant has had a prior opportunity to cross examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *see also United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007). The Confrontation Clause is more rigid than the hearsay rule in terms of exceptions, but it applies to testimonial statements only:

> It applies to witnesses against the accused—in other words, those who bear testimony. Testimony, in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.

*Davis v. Washington*, 547 U.S. 813, 823-24 (2006) (quoting *Crawford*, 541 U.S., at 51) (internal quotations and citations omitted).

4

On appeal, "[w]hen 'the evidentiary issues relate to a claimed violation of the Sixth Amendment,' the de novo standard of review applies." *United States v. Cunningham*, 679 F.3d 355, 382 (6th Cir. 2012) (quoting *United States v. Davis*, 577 F.3d 660, 666 (6th Cir. 2009)). But plain error review is also appropriate for alleged Confrontation Clause violations not preserved at trial. *United States v. Powers*, 500 F.3d 500, 505 (6th Cir. 2007).

1. *Background testimony about the investigation*

The detective testified that he began investigating Reynolds based on information he had received suggesting that defendant was involved in the sale of narcotics, but he never described the source of the information. Defendant relies heavily on two cases to support his claim that this statement was admitted in error: *United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004) and *United States v. Powers*, 500 F.3d 500 (6th Cir. 2007). Both cases are distinguishable.

In *Powers*, an officer testified at trial that a confidential informant notified a narcotics task force that the defendant "was trafficking in significant quantities of cocaine" and "was a well-known cocaine dealer" which triggered a sting operation. 500 F.3d at 503, 504. The court considered whether this was permissible background information and stated that it presented a close question. *Id.* at 509. The court explained that "testimony 'provided merely by way of background,' or to explain why the Government commenced an investigation, is not offered for the truth of the matter asserted." *Id.* at 508 (quoting *Cromer*, 389 F.3d at 676). We ultimately held that the district court erred by admitting the testimony and that the defendant's confrontation rights were violated because the details about the defendant's past activities "were not necessary to set the context of the sting operation for the jury." *Id.* at 510. In the end, because of overwhelming evidence of guilt, the court ultimately deemed the error harmless and affirmed the conviction. *Id.*

In *Cromer*, an officer testified that she and her partner "had information about 3284 Buchanan. And we began an investigation about this residence being associated with selling drugs." 389 F.3d at 675. As to this testimony, the defendant's "confrontation right was not implicated because the testimony was provided by way of background." *Id.* at 676 (citing *United States v. Martin*, 897 F.2d 1368, 1371-72 (6th Cir. 1990)). The "out-of-court statements . . . served the purpose of explaining how certain events came to pass or why the officers took the actions they did. Because the statements were not offered to establish the truth of the matter asserted, the Confrontation Clause does not apply." *Id.* On the other hand, the court held that other testimony about Cromer—including his nickname and physical description—was offered for the truth of the matter asserted and formed a key part of the government's case. *Id.* at 677-78. As a result, the admission of the testimony constituted plain error and the defendant was granted a new trial. *Id.* at 679.

By contrast, in this case Reynolds cannot point to any specific statement received by the detective. The detective's statement at trial was not used by the government for its truth but rather as background information to explain how and why law enforcement was investigating defendant. The CI did not approach law enforcement with a "tip" about Reynolds; instead he was used for the sole purpose of gathering evidence. At trial, the government's case was almost exclusively based on the recordings of Reynolds selling the narcotics and firearm to the CI and the related testimony of the detective.

Because the challenged statement was neither testimonial, nor offered for its truth, the Confrontation Clause and the rule against hearsay were not violated, and admitting the statement was not an abuse of discretion.

2. *Information about defendant's residence*

The detective also testified about how he knew where Reynolds lived, saying "people in the community" told him, plus that the CI knew defendant and "knew where he lived." Later, during cross-examination, the detective added that "people told me who was selling narcotics out of there." Counsel for defendant did not object to the admission of any of these statements, and so we review for plain error. Plain error review requires that we "determine whether: (1) there was an error, (2) which was plain, (3) that affected the defendant's substantial rights, and (4) that, in our discretionary view, seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings." *Gibbs*, 506 F.3d at 483.

Reynolds cannot make this showing. The first two statements about the residence are admissible for the same reasons as the background information considered above. For one thing, defendant does not point to any particularized statement. And the testimony was not offered for the truth of the matter asserted. The detective was merely explaining the circumstances surrounding the CI's controlled purchases from Reynolds. As above, the statements "served the purpose of explaining how certain events came to pass or why the officers took the actions they did." *Cromer*, 389 F.3d at 676. The statements were not offered by the government to establish guilt. *Id.* at 670. The location of the drug and firearm purchases is not an element of the offense and testimony about the location did nothing to establish the guilt of defendant.

On its face, the third piece of testimony by the detective about defendant's residence, that "people told me who was selling narcotics out of there," might have presented a closer question under other circumstances. Even though the speaker is unidentified, the statement arguably *could* have been used by the government to help establish the guilt of defendant, and allowing "anonymous accusations of crime without any opportunity for cross-examination would make a

7

mockery of the Confrontation Clause." *Id.* at 675. Here, though, the government did not rely on this statement for its truth. In fact, the statement was made under cross-examination as defense counsel sought to establish that law enforcement was unaware who really owned the house where the controlled purchases occurred.

As an initial matter, we need not consider whether the district court erred by admitting a statement made during "cross-examination since 'a party may not complain on appeal of errors that he himself invited or provoked.'" *Id.* at 679 n.11 (quoting *Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 60 (6th Cir. 1991)); *see also Shields v. United States*, 273 U.S. 583, 586 (1927) ("A defendant in a criminal case cannot complain of error which he himself has invited.") (internal quotation omitted).

Even setting aside the "invited error" problem, defendant's challenge of this statement cannot survive plain error review on the merits. Given the overwhelming evidence of defendant's guilt, he cannot show that admitting the statement was a plain error that affected his substantial rights.

### B. "Mere Presence" Jury Instruction

While Reynolds admits he was present for both of the CI's controlled purchases, he claims that he did not participate and he requested jury instructions in order for the jury to understand that his mere presence during the transactions was insufficient to find him guilty. Defendant was primarily concerned about the drug distribution charges, because the instructions given for the firearm possession count included the admonition that "just being where something is located does not equal possession" and "just being present with others who had possession is not enough to convict."

The standard instructions for drug distribution, which were given to the jury, explain that, "The term 'distribute' means the defendant delivered or transferred a controlled substance." Defendant's proposed instructions drew from the Sixth Circuit pattern instructions for "conspiracy," which explains that one's mere presence around a conspiracy to distribute narcotics is not sufficient to establish participation in the conspiracy. Here, defendant was charged with actual distribution, not conspiracy, but he adapted the conspiracy instructions to explain that if he was merely present during a drug transaction between other parties he could not be convicted for distribution.

The district court ultimately rejected the proposed instruction for two reasons, (1) because the proposed instructions "could cause more confusion by trying to cobble together that language from conspiracy," and (2) the existing instructions were "more appropriate to this factual context" and defendant's "issue is adequately addressed in the instructions that we're giving."

We review a district court's refusal to grant a requested jury instruction for an abuse of discretion. *Williams v. Eau Claire Pub. Sch.*, 397 F.3d 441, 445 (6th Cir. 2005). "An abuse of discretion may be found if '(1) the proposed instruction is substantially correct; (2) the proposed instruction is not substantially covered by other delivered charges; and (3) the failure to give the instruction impaired the defendant's theory of the case.'" *United States v. Henderson*, 626 F.3d 326, 342 (6th Cir. 2010) (quoting *United States v. Triana*, 468 F.3d 308, 315 (6th Cir. 2006)).

The district court did not abuse its discretion by disallowing the requested jury instruction. While the district court conceded the first point, noting that defendant's proposed instruction was not "exactly inaccurate," neither of the last two elements applies here. First, the substance of the additional instruction sought is adequately covered by the existing instruction.

9

The delivered instruction explained that Reynolds must have "delivered or transferred" the controlled substance to be found guilty of distribution, and that instruction was sufficient to cause a jury to acquit defendant if they believed that someone else delivered the narcotics. Second, the failure to give the requested instruction did not impair defendant's theory of the case. The evidence of defendant's guilt—including recordings of the two controlled purchases—was one-sided and overwhelming. "A party needs only a slim amount of evidence to support giving a jury instruction, but jury instructions must be viewed as a whole to determine whether the instruction is necessary." *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 387 (6th Cir. 2008). Seizing on a couple of garbled words on the recordings does not satisfy even this "slim amount of evidence" standard.

## III.

The judgment of the district court is **affirmed**.

10