# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 9, 2011 Session

## STATE OF TENNESSEE v. BOBBY LEWIS SMITH

### Direct Appeal from the Criminal Court for Clay County
### No. 2009-CR-53      David Patterson, Judge

---

### No. M2010-02077-CCA-R3-CD - Filed August 31, 2012

---

The defendant, Bobby Lewis Smith, was convicted by a Clay County jury of delivery of a schedule III controlled substance, a Class D felony. He was subsequently sentenced, as a Range III offender, to serve nine years in the Department of Correction. On appeal, he contends: (1) that the evidence is insufficient to support the verdict; (2) that the trial court erred in allowing admission of a videotape in violation of the Confrontation Clause and authentication rules; and (3) that ordering service of the nine-year term resulted in an excessive sentence. Following review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

David Brady, District Public Defender, and Allison M. Rasbury and Kay Bradley, Assistant Public Defenders,for the appellant, Bobby Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Randall A. York, District Attorney General; and Mark E. Gore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural Background and Facts

The defendant's conviction in this case was based upon his act of delivering twenty prescription Lortab pills to a confidential informant. In 2006, Officer David Hunter of the Celina Police Department was assigned to the "Hyda" task force. During the following two

years, he conducted controlled drug buys, participating personally in approximately one hundred controlled purchases. During this period, David Stephens, a confidential informant who was compensated for his services, assisted Officer Hunter in approximately forty separate cases. Mr. Stephens informed Officer Hunter that the defendant might be selling prescription drugs, and a purchase was set up between Mr. Stephens and the defendant on July 4, 2008.

On that day, Officer Hunter met with Mr. Stephens and planned the transaction. First, Mr. Stephens, as well as his vehicle, were searched by Officer Hunter to ensure that no contraband was present. Mr. Stephens was then fitted with surveillance equipment. Officer Hunter explained that:

> [W]e wired [Stephens] up with a transmitter where I monitored his activities through a Kellset that also had the capabilities of recording. We also or I also made sure that I put a cassette recorder, a miniature cassette recorder on his person. And then in this particular case, we used a button camera, or excuse me, I used a button camera and this was wired to him on his body by myself.

Officer Hunter was able to monitor the audio recordings in real time, but he was not able to do so with the video recordings from the button camera. Because of this, Officer Hunter visually monitored Mr. Stephens during the pendency of the transaction. Officer Hunter followed Mr. Stephens in a separate car to the defendant's residence where the transaction was to occur. Officer Hunter observed Mr. Stephens enter the home, and he recognized the defendant's voice through the Kellset as the sale was occurring. He heard no other voices on the tape. Mr. Stephens gave the defendant the money provided by Officer Hunter and received the drugs in exchange. He then left the residence and met with Officer Hunter at an agreed-upon spot. Officer Hunter took possession of the pills, which were later determined to be twenty dihydrocodeinone tablets.

Based upon these acts, the defendant was indicted by a Clay County grand jury for delivery of a schedule III controlled substance. Prior to trial, the defendant filed a motion to suppress the video tape of the exchange between himself and Mr. Stephens, and a hearing was held. The trial court denied the motion, and the case proceeded to trial. The videotape was admitted into evidence through Officer Hunter, who acknowledged that he was not actually physically present when the tape was being recorded. The video from the button camera showed the actual transaction as it had occurred inside the defendant's home. Mr. Stephens did not testify. Also admitted was the audio recording of the transaction, as well as various pictures taken by Officer Hunter of Mr. Stephens entering the defendant's house.

After hearing all the evidence presented, the defendant was found guilty as charged.

Following a separate sentencing hearing, he was ordered to serve nine years, as a Range III offender, in the Department of Correction. The trial court denied the defendant's motion for new trial, and this appeal followed.

## Analysis

On appeal, the defendant has raised three issues for our review: (1) whether the court erred in denying the defendant's motion to suppress the videotape on Confrontation Clause and authentication grounds; (2) whether the evidence is sufficient to support the conviction; and (3) whether the nine-year sentence imposed by the trial court is excessive. We review each issue in turn.

### I. Motion to Suppress/Admission of Videotape

First, the defendant challenges the denial of his motion to suppress and admission of the videotape of the transaction. He challenges the videotape upon grounds of both the Confrontation Clause and authentication.

#### a. Confrontation Clause

First, the defendant contends that the trial court erred in denying his motion to suppress because admission of the videotape violated the rights guaranteed him under the Confrontation Clause of the United States Constitution and article 1, section 9 of the Tennessee Constitution. Rulings on the admissibility of evidence are reviewed for an abuse of discretion. *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). However, the determination of whether a hearsay statement violates a defendant's confrontation rights is a pure question of law entitled to de novo review. *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010).

The Confrontation Clause of the 6th Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This fundamental right of confrontation applies to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The Tennessee Constitution also guarantees the right of confrontation, providing "[t]hat in all criminal prosecutions, the accused hath the right to . . . meet the witnesses face to face . . . ." Tenn. Const. art. I, § 9. Although the language of the Federal and State constitutional provisions differs slightly, the Tennessee Supreme Court has "traditionally adopted and applied the standards enunciated by the United States Supreme Court" when determining an accused's right to confront under the Tennessee Constitution. *State v. Cannon*, 254 S.W.3d 287, 301 (Tenn. 2008).

The United States Supreme Court has interpreted the Confrontation Clause to bar admission of certain out-of-court statements unless: (1) the witness was unavailable to testify; and (2) the defendant had been given a previous opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 35, 53-54 (2004). This bar applies only to statements defined by law as testimonial hearsay. *Id*.; *see also State v. George Anthony Bell*, No. M2008-01187-CCA-R3-CD (Tenn. Crim. App., at Nashville, Nov. 19, 2009). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). The Confrontation Clause does not affect the admissibility of statements that do not fall within this traditional definition of hearsay. *United State v. Maher*, 454 F.3d 13, 20 (1st Cir. 2006). Regardless of whether the statement is testimonial or non-testimonial, therefore, the Confrontation Clause does not bar statements lacking assertive content, such as commands or questions. *George Anthony Bell*, No. M2008-01187-CCA-R3-CD (citations omitted). Also the Confrontation Clause does not bar a statement with assertive content but not offered for the truth of the matter asserted. *Id*. (citing *Crawford*, 541 U.S. at 59 n.9).

Hearsay is testimonial where it takes the form of "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact" or of a statement "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51-52. The following three categories of statements are considered "testimonial":

> [1] ex parte in-court testimony or its functional equivalent - - that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; [2] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and 3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id*. (internal quotations and citations omitted). Courts have further refined *Crawford's* distinction between testimonial and non-testimonial statements, developing several tests that focus on the declarant's intents. *See Davis v. Washington*, 547 U.S. 813 (2006) (creating a "primary purpose" test under which courts must determine whether a statement is testimonial in that its primary purpose "is to establish or prove past events potentially relevant to a later criminal prosecution"); *United States v. Powers*, 500 F.3d 500, 507-08 (6th Cir. 2007) (recognizing a "testimonial/nontestimonial continuum" where a confidential informant's statements were considered testimonial because they "were elicited as part of the

government's investigation into the defendant's past drug activity.").

In our review of this issue, we find the case of *George Anthony Bell*, No. M2008-01187-CCA-R3-CD (Tenn. Crim. App., at Nashville, Nov. 19, 2009), to be particularly helpful. That case involved a similar situation with a confidential informant conducting a controlled buy with the defendant, which was monitored by officers through audio equipment. The defendant in that case asserted that admission of the audio tape violated his Confrontation Clause rights because the confidential informant did not testify. *George Anthony Bell*, No. M2008-01187-CCA-R3-CD. Essentially, that is the same argument now presented by the defendant in this case with regard to the video tape.

In *Bell*, this court noted that the admissibility of informant statements under the Confrontation Clause depended on the statement's context. *Id*. The court further noted the distinction between informant's statements made directly to police and those made during a recorded conversation between the informant and a non-law enforcement party, with the former violating the Confrontation Clause and the latter not. *Id*. The court stated that in the second type of situation, the informant generally did not divulge information but rather converses with a third party in order to expose a target's criminal acts to police. *Id*. As a consequence, the fact of the informant's interaction with a third party rather than the substance of his statements during that interaction is the chief focus of law enforcement and, later, of a criminal trial. *Id*. Thus, the court held that generally, these type of statements are admissible because they are not offered for the truth of the matter asserted. *Id*. (citing *Crawford*, 541 U.S. at 59 n.9).

Turning to the case at bar, we note that our analysis of whether the Confrontation Clause bars the statements at issue, therefore, involves several inquiries: (a) whether the statements contain assertions; (b) whether the statements are testimonial; and (c) whether the statements are offered for the truth of the matter they assert. *Id*.

As an initial matter, as pointed out by the State, while the record does contain a CD with a file purporting to be the videotape at issue, the file does not appear to be accessible to be opened. Normally, as the preservation of the issue rests primarily with the defendant, waiver would result based upon the failure to prepare an adequate record. *See State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). However, because we are able to discern the general content of the videotape, we elect review in the interest of justice.

A statement has been defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion." Tenn. R. Evid. 801(a). Although we were unable to review the video of the transaction, and Officer Hunter did not give testimony regarding any statements made on the tape, we accept that there were

statements made on the tape which contained assertions. The trial court determined such and, absent an entire record, we must accept that finding.

However, as held by the *Bell* court and the trial court in this case, we likewise cannot conclude that any statements on the tape were introduced to prove the truth of the assertions made. Rather they were introduced by the State to prove that the informant and the defendant had a conversation regarding the sale of these drugs. Thus, introduction of the statements did not violate the Confrontation Clause as they are not hearsay.

Moreover, as also noted in *Bell* and asserted by the State on appeal, the informant's statements served to give context to statements made by the defendant on the video which were admissible statements. The trial court noted that "there's not a whole lot being said anyway, but what is being said is being primarily said by the defendant." The defendant's statements on the tape constitute admissions by a party-opponent and, as such, are by definition not hearsay under Rule 801(c) and, thus, do not offend *Crawford*. The defendant is, therefore, entitled to no relief on this issue.

### b. Authentication

The defendant challenges admission of the video with a secondary argument as well with regard to a proper foundation. He contends that because Officer Hunter was not present during the time that the videotape was actually recorded inside the home, he is not a "witness with knowledge" and cannot thereby properly authenticate it as required for admission.

Proffered evidence must be authenticated or identified as a condition precedent to admissibility. Tenn. R. Evid. 901(a). This requirement is satisfied "by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." *Id*. Authentication may be established by the testimony of a witness with knowledge that a matter is what it is claimed to be. *Id*. at 901(b). The trial court is the "arbiter of authentication issues," and the court's discretion will not be disturbed absent clear mistake. *Id*. at 901, Advisory Comm'n Cmts; *State v. Mickens*, 123 S.W.3d 355, 376 (Tenn. Crim. App. 2003).

An argument similar to the defendant's, that being that the confidential informant is the only person who can authenticate these type videos, was previously rejected by this court. *See State v. Keary Lee Chearis, a/k/a Karry Cheairs and "Rabbit,"* No. W2007-01850-CCA-R3-CD (Tenn. Crim. App., at Jackson, Aug. 11, 2008). As pointed out, the Tennessee Rules of Evidence require only "evidence sufficient to the courts to support a finding by the trier of fact that the matter in question is what its proponent claims." *Id*. (finding it sufficient for officers to authenticate who had set up the video equipment, observed from another vantage

point, and retrieved the tape immediately following the purchase).

Likewise, in this case, Officer Hunter, who was familiar with and had previously used this video equipment, set up the equipment which recorded the transaction. The confidential informant and his car were both searched prior to his leaving Officer Hunter's presence. Additionally, Officer Hunter utilized audio equipment which allowed him to hear, in real time, everything done or said by the confidential informant and the defendant during the transaction. Officer Hunter maintained visual contact with the informant's car until he arrived at the defendant's home. Officer Hunter also took photographs of the confidential informant both entering and leaving the defendant's home. Following the transaction, the confidential informant immediately met with Officer Hunter and presented him with the equipment. Officer Hunter removed the videotape from the camera. At trial, he identified the tape as the one which he had removed and testified that no subsequent additions or deletions had been made. This is sufficient to satisfy the authentication requirement by a witness with personal knowledge.

## II. Sufficiency of the Evidence

Next, the defendant challenges the sufficiency of the evidence supporting his conviction. Specifically, he contends the State failed to meet their burden of proof with regard to the element of "delivery" because the confidential informant, Mr. Stevens, was not called to testify to the actual transaction. The defendant also contends that the State failed to prove that the substance purchased was actually a schedule III controlled substance, because only one of the twenty pills was actually tested by the TBI.

When an accused challenges the sufficiency of the convicting evidence, the standard of review is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *State v. Franklin*, 308 S.W.3d 799, 825 (Tenn. 2010); *see also* Tenn. R. App. P. 13(e). "[T]he State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000); *see also State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). Questions involving the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and an appellate court does not reweigh or re-evaluate the evidence. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in favor of the State. *Id*. "Because a verdict of guilt removes the

presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

As noted, the defendant was convicted of delivery of a schedule III controlled substance, which is defined by our statutes as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." T.C.A. § 39-17-402 (2010). A schedule III controlled substance includes dihydrocodeinone and its salts. *Id*. at -410(e)(1).

Following review, we cannot agree with the defendant's contention. We know of no law which requires the State to present the testimony of a confidential informant in order to establish its case. The State maintains authority and discretion over what evidence it wishes to present to the jury. Although the confidential informant might have been a stronger witness to establish the case, the State in this case chose to present other evidence. That evidence was placed before the jury, who is responsible for weighing said evidence in reaching a determination of whether the State had met its burden of proof. In this case, the jury felt that the State had indeed carried the burden that the defendant delivered a controlled substance.

Likewise, we are unaware of any requirement for the State to test each of the twenty tablets acquired in this drug buy in order to establish that the defendant delivered what was in fact a controlled substance. The State sent the substance to the TBI who, as part of their standard procedure, tested one of the pills. The test revealed that that pill was in fact dihydrocodeinone. Again, this evidence was put before the jury. From their verdict, it is clear that they obviously inferred from the evidence that all twenty pills were in fact a controlled substance, which is a reasonable inference as they were all sold together and represented to be such.

Viewing the evidence in the light most favorable to the State, we can reach no conclusion other than that the evidence presented was sufficient to allow a "rational trier of fact [to] have found the essential elements of the crime beyond a reasonable doubt." *See Jackson*, 443 U.S. at 319. Officer Hunter testified that the defendant became a target of a drug investigation and was approached by the confidential informant. That informant met with Officer Hunter and was searched for contraband, given cash, and set up with monitoring equipment. The informant then proceeded to drive to the defendant's residence, followed by Officer Hunter. He was observed entering the home. Officer Hunter monitored the entire transaction in real time through the audio device. He testified that he recognized the

defendant's voice during the transaction based upon personal knowledge of the defendant. When the informant left the defendant's home, he immediately returned to rendevous with Officer Hunter and was in possession of twenty pills, one of which was established to be dihydrocodeinone. We must conclude that this direct and circumstantial evidence presented to the jury was sufficient to allow a reasonable juror to conclude that the defendant delivered a schedule III controlled substance.

Moreover, there was also a videotape of the entire transaction, which has been previously discussed above and found to have been properly admitted. Regardless, even without the presence of that tape, the above listed evidence is more than sufficient to support the conviction. The defendant has not contested its admissibility at all. As such, we are unable to conclude that he has carried his burden on appeal.

## III. Sentencing

Finally, the defendant contends that service of the nine-year sentence imposed by the trial court was excessive. Specifically, he contends that the court erred in denying him a sentence of "some form of probation" rather than one of incarceration, which resulted in the sentence not being "the least severe measure" necessary to achieve the purposes of the sentencing act. The burden of demonstrating that a sentence is erroneous is placed upon the appealing party. *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008).

This court's review of a trial court's sentence is de novo with a presumption that the trial court's determinations are correct. *Id*. This presumption "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *Id*. at 344-45 (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails" and "'our review is simply de novo.'" *Id*. at 345 (quoting *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004)).

Pursuant to the 2005 amendments, our Sentencing Act has abandoned the statutory minimum sentence and renders enhancement and mitigating factors advisory only. T.C.A. §§ 40-35-114, -210(c). Thus, the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "'consistent with the purposes and principles of the Sentencing Act.'" *Carter*, 254 S.W.3d. at 343 (*quoting* T.C.A. § 40-35-210(d)). In sentencing a defendant, the trial court is required to consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in [sections] 40-35-113 and 40-35-114;
6) Any statistical information provided by the Administrative Office of the Courts as to the sentencing practices for similar offenses in Tennessee; and
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b).

A sentence is proper if the record reflects that the trial court considered those enhancement and mitigating factors it deemed applicable, and the trial court, in determining the specific sentence, considered the nature and characteristics of the crime and the character and background of the defendant, and imposed a sentence which is consistent with the principles and purposes of sentencing. T.C.A. § 40-35-210(b), (d). The sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. T.C.A. § 40-35-103(2), (4).

As noted, the defendant was convicted as a Range III offender of a Class D felony. Therefore, his applicable sentencing range was eight to twelve years. T.C.A. § 40-35-112(c)(4). The trial court sentenced the defendant to nine years, which falls within the applicable sentencing range. In reaching this determination, the trial court relied upon the presence of a single enhancement factor, that being prior history of criminal convictions and criminal behavior. *See* T.C.A. § 40-35-114(1). Although not giving it great weight, the trial court did apply the catchall mitigating factor based upon the defendant's age and health. *See* T.C.A. § 40-35-113(13). The defendant does not contest the length of the sentence imposed, but only the manner of service. We agree that the trial court properly considered all sentencing principles and factors in reaching it determination and conclude no error is apparent in the sentence length.

Turning then to the crux of defendant's argument, *i.e.*, that he was entitled to probation, we note that pursuant to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347. Instead, our statute now reads that a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony "should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id.* at 343 (citing T.C.A. § 40-35-102(6)). Evidence to the contrary may be established by showing that: (1) confinement is needed to protect society by restraining a defendant who has

a long history of criminal conduct; (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses; or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. *Ashby*, 823 S.W.2d at 169 (citing T.C.A. § 40-35-103(1)(A)-(C)).  The trial court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114.  T.C.A. § 40-35-210(b)(5); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).  In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate.  T.C.A. § 40-35-103(5); *Boston*, 938 S.W.2d at 438.

In this case, while the defendant remains eligible for probation because his sentence was ten years or less and the offense for which he was convicted is not specifically excluded by statute, he does not fall within the parameters of the statute in question, because he was convicted as a Range III persistent offender.  Regardless, the defendant has failed to establish his "suitability for full probation." *See State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); T.C.A. § 40-35-303(b).  A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 201 Tenn. 156, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other ground by *State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000)).  Additional factors which should be considered are: (1) the nature and characteristics of the crime; (2) the defendant's potential for rehabilitation; (3) whether the sentence would unduly depreciate the seriousness of the offense; and (4) whether an alternative sentence would provide an effective deterrent. *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995).

In its decision to deny probation in this case, the trial court relied upon the defendant's five prior felony convictions used to establish the range, that he had previously been placed on probation multiple times, and the multitude of other prior convictions dating back to 1998. The defendant contends that reliance upon these factors is not enough.  He asserts that because of his extensive health problems and age, that he had done well on probation, and that he had no prior drug convictions supports a finding that he was entitled to probation. We cannot agree.  Evidence of each of these facts was placed before the trial court.  In fact, the court even allowed some mitigation based upon the defendant's age.  However, those factors do not alone support the defendant's burden of proving his suitability for probation. His argument ignores that plethora of prior convictions and multiple sentences of probation. Probation is a largesse which the defendant has been afforded previously; yet, he continued to commit crimes against the laws of this State.  That, as found by the trial court, weighs heavily against yet another sentence of probation.  The defendant is entitled to no relief on this issue.

## CONCLUSION

Based upon the foregoing, the judgment of conviction and resulting sentence are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE